UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

MATTHEW W. S.,

            Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

            Defendant.

Case No. 6:20-cv-01439-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

Plaintiff Matthew W. S.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

Page 1 – OPINION AND ORDER

jurisdiction pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with 28 U.S.C. § 636(c). For the following reasons, the Commissioner's decision is reversed and remanded for an immediate calculation and award of benefits.

*Procedural Background*

On November 17, 2015, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. On December 6, 2016, Plaintiff protectively filed a Title XVI application for supplemental security income benefits. In both applications, Plaintiff alleged disability beginning July 15, 2015, due to severe anxiety, mood disorder, eating disorder, stomach pain, scoliosis, hernias, and cervical degenerative disc disease. Tr. Soc. Sec. Admin. R. ("Tr.") 66. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on October 22, 2018, at which Plaintiff appeared with his attorney and testified. A vocational expert, Kimberly Mullinax, also appeared and testified at the hearing. On December 5, 2018, the ALJ issued an unfavorable decision.

Plaintiff sought review by the Appeals Council. Tr. 1-2. The Appeals Council granted Plaintiff's request for review because the ALJ failed to consider opinion evidence submitted prior to the hearing from Plaintiff's nurse practitioner Teresa Burfine. Tr. 5. The Appeals Council gave Ms. Burfine's opinion little weight and affirmed the ALJ's decision. Tr. 6. Therefore, the Appeals Council's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1970, was forty-six years old on the alleged onset date of disability, and forty-eight years old on the date of the ALJ's decision. Tr. 65. Plaintiff completed the

eleventh grade and has past relevant work as a farm machine operator and a hand sander. Tr. 40, 55.

*The ALJ's Decision*

The ALJ determined that Plaintiff meets the insured status requirements through September 30, 2017, and at step one, found that he has not engaged in substantial gainful employment since his alleged onset date of July 15, 2015. Tr. 20. At step two, the ALJ determined that Plaintiff has the following severe impairments: cervical degenerative disc disease, status-post fusion; a psychotic disorder, NOS; attention deficit-hyperactivity disorder (ADHD); an anxiety disorder; and major depressive disorder. Tr. 20. At step three, the ALJ determined that Plaintiff's severe impairments did not meet or equal any listed impairment. Tr. 21. The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work, with the following additional limitations: he can lift and carry twenty pounds occasionally and ten pounds frequently; he can sit, stand, or walk for six hours each in an eight-hour day; he can occasionally reach overhead with the bilateral upper extremities; he can perform only simple tasks with a general education development ("GED") reasoning level of two or less and unskilled work as defined by the Dictionary of Occupational Titles ("DOT"); he can make only simple work-related decisions; and he can tolerate only occasional interaction with coworkers, supervisors, and the general-public. Tr. 23.

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as a hand sander. Tr. 26. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as cleaner/housekeeper, production assembler, and packing-line worker. Tr. 27. Therefore, the

ALJ found that Plaintiff was not disabled from July 15, 2015, through the date of the decision and denied Plaintiff's application for disability benefits.  Tr. 28.

*The Appeals Council's Decision*

The Appeals Council granted review because the ALJ did not consider all of the evidence in the record, specifically the residential functional capacity opinion from Teresa Burfine, NP. Tr. 5.  At step one, the Appeals Council agreed with and adopted the ALJ's finding that Plaintiff has not engaged in substantial gainful employment since his alleged onset date of July 15, 2015. Tr. 6.  At step two, the Appeals Council agreed with and adopted the ALJ's finding that Plaintiff has the following severe impairments: cervical degenerative disc disease, status-post fusion; a psychotic disorder, NOS; attention deficit-hyperactivity disorder (ADHD); an anxiety disorder; and major depressive disorder.  Tr. 6.  At step three, the Appeals Council agreed with and adopted the ALJ's finding that Plaintiff's severe impairments did not meet or equal any listed impairment.  Tr. 6.  In evaluating the evidence of record, including Ms. Burfine's opinion, the Appeals Council determined that Ms. Burfine's opinion deserved little weight because it is not supported by other evidence in the medical record.  Tr. 5-6.

At step four, the Appeals Council agreed with and adopted the ALJ's finding that Plaintiff is capable of performing past relevant work as a hand sander.  Tr. 6.  At step five, the Appeals Council agreed with and adopted the ALJ's finding that jobs exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 7.  Accordingly, the Appeals Council found that Plaintiff was not disabled under the Act.  Tr. 7.

*Issues on Review*

Plaintiff argues the following errors were committed: (1) the Appeals Council erred in adopting the ALJ's evaluation of the medical opinion of the examining mental health provider, Scott Alvord, Psy.D.; (2) the Appeals Council erred in giving Ms. Burfine's opinion little weight; and (3) the Appeals Council erred in adopting the ALJ's decision to reject Plaintiff's subjective symptom testimony. The Commissioner argues that the Appeals Council reasonably adopted the ALJ's analysis of Dr. Alvord's opinion, reasonably discounted Ms. Burfine's opinion, and properly discounted Plaintiff's subjective allegations. Additionally, the Commissioner argues that the Appeals Council's decision is supported by substantial evidence and is free of harmful legal error. Alternatively, the Commission contends that if the Appeals Council erred, a remand for further administrative proceedings is necessary.

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009. "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for

that of the Commissioner." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). When a claimant submits new evidence to the Appeals Council, the court must consider whether that new evidence, in the context of the record as a whole, undermines the ALJ's non-disability determination. *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012).

*Discussion*

I.  Medical Opinion Evidence

   *A.  Standards*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician.[2] *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); 20 C.F.R. § 404.1527.

The ALJ may "reject the uncontradicted medical opinion of an examining psychologist only if the ALJ provides 'clear and convincing' reasons supported by substantial evidence in the

---

[2] For all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. §§ 404.1520c, 416.920c (not §§ 404.1527, 416.927) govern. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c, 416.920c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. §§ 404.1520c, 416.920c. In this case, Plaintiff filed his claims for benefits on November 17, 2015 and December 6, 2016, well before March 27, 2017. *See* 20 C.F.R. § 404.614 (defining when an application for benefits is considered filed). Therefore, the court analyzes Plaintiff's claim utilizing § 416.927 (providing the rules for evaluating opinion evidence for claims filed prior to March 27, 2017).

Page 6 – OPINION AND ORDER

record." *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2007). Where a physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons, backed by substantial evidence to discount it. *Ghanim*, 763 F.3d at 1160-61.

A nurse practitioner's opinion qualifies as an "other" medical source. *Popa*, 872 F.3d at 906. An ALJ may discount other medical sources' opinions if they provide "germane reasons for doing so." *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (internal quotation and citation omitted); *Popa*, 872 F.3d at 906 (providing that ALJ may discount opinion from an "other source" by identifying "reasons germane to each witness for doing so") (internal quotation and citation omitted). Additionally, the ALJ must consider the factors set forth in 20 C.F.R. § 416.927(c) when evaluating the other sources' opinions. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (providing ALJ must consider factors in § 404.1527(c), including nature and extent of treating relationship, supportability, and consistency with the record).

B.   *Analysis*

Plaintiff argues that the ALJ failed to meet the legal standards when rejecting Dr. Alvord's examining medical opinion and therefore, the Appeals Council erred in adopting the ALJ's evaluation of Dr. Alvord. Additionally, Plaintiff argues that the Appeals Council erred in rejecting the "other" medical source statements of Ms. Burfine.

1.   Scott T. Alvord, Psy.D

Dr. Alvord conducted a psychological examination of Plaintiff on September 26, 2018. Dr. Alvord performed a mental status examination, a Wechsler Adult Intelligence Scale 4th Edition test ('WAIS IV"), a Wide Range Assessment of Memory and Learning test ("WRAML II"), and a Trail Marking Test. Tr. 454. The ALJ gave Dr. Alvord's medical opinion little weight because

"his examination findings, [are] not entirely consistent with the rest of the medical evidence of record." Tr. 26. Specifically, Dr. Alvord noted that Plaintiff's presentation and test results "highlight the possibility of a frontal lobe condition given excessive anger and irritability, difficulty with executive functions, getting along with other people, responding to novel stimuli, etc." Tr. 458. Additionally, Dr. Alford discussed that there is evidence of Schizoaffective Disorder, depressed type, which could "account for underlying paranoia and a history of hallucinations." Tr. 458. Dr. Alvord stated that during the examination, Plaintiff was irritable, agitated, and argumentative. Tr. 456. Dr. Alvord also provided a Medical Source Statement of work-related abilities. Tr. 460. In that statement, Dr. Alvord opined that Plaintiff had mild limitations in understanding, remembering, and carrying out simple instructions. Tr. 460-61. However, Dr. Alvord also assessed that Plaintiff has numerous marked limitations including: Plaintiff's ability to interact appropriately with the public, interact appropriately with supervisors, interact appropriately with coworkers, and respond appropriately to usual work situation and to changes in routine work setting. Tr. 461.

The agency physicians' opinions contradict Dr. Alvord's opinion. Dr. Alvord's opinion is contradicted by the agency physicians. Tr. 70, 111. Therefore, the ALJ was required to provide specific and legitimate reasons for discrediting his opinion. The ALJ's decision fails to meet this standard.

Dr. Alvord opined that Plaintiff has numerous serious mental health limitations. Yet, the ALJ's reasoning involves minor, technical inconsistencies. The ALJ stated that while the "bulk of the medical evidence contains reference to repeated panic attacks and no evidence of paranoia or hallucinations," Dr. Alvord noted in his examination that the Plaintiff reported "no panic, but

described agitation, irritability, rumination, and a tendency towards physically manifested symptoms. Tr. 26. The ALJ also noted that Plaintiff stated his friends would not let him socially isolate, but he told Dr. Alvord that he went "weeks without seeing anyone." Tr. 26. While technically correct that Dr. Alvord did not diagnose Plaintiff with panic, Plaintiff reported to Dr. Alvord that he experiences "physically manifested symptoms" such as tachycardia and difficulty catching his breath. Tr. 455-56. Dr. Alvord's report reflects that Plaintiff's sister corroborated Plaintiff's assertion he socially isolates. Tr. 456. Additionally, Dr. Alvord's opinion is consistent with other evidence of record that references panic. *E.g.,* Tr. 48, 393, 475, 521. Dr. Alvord's opinion reflects that Plaintiff reported "excessive anger" and "butting heads" with coworkers and authority figures. Tr. 455. Plaintiff testified to "flipping out," screaming, yelling, hitting things, and losing control at the hearing. Tr. 42. Thus, the court concludes that the ALJ's reasoning fails to amount to specific and legitimate reasons backed by substantial evidence for discounting Dr. Alvord's opinion when viewing the record as a whole. Accordingly, the ALJ erred in discounting Dr. Alvord's opinion.

    2.    Teresa Burfine, NP

Ms. Burfine began treating Plaintiff in June 2017. Tr. 521. On November 15, 2018, Ms. Burfine completed a treating source statement in which she opined that Plaintiff had the following limitations: Plaintiff could sit, stand, or walk for ten minutes at a time; Plaintiff could sit for two hours and sit or stand for one hour in an eight-hour workday; Plaintiff needs a job which permits shifting positions at will from sitting, standing, or walking; and Plaintiff would need to take unscheduled breaks every two hours for ten minutes during the workday. Tr. 523-24. Additionally, Ms. Burfine opined that Plaintiff can do the following in a competitive work

situation: frequently lift less than ten pounds, occasionally lift ten and twenty pounds, and never lift fifty pounds. Tr. 524. Ms. Burfine further indicated that Plaintiff has limitations in repetitive reaching, handling, and fingering. Tr. 524. During an eight-hour workday, Ms. Burfine opined that Plaintiff could use his right and left hand for twenty percent of the workday, his right fingers for twenty percent of the workday, his left fingers for ten percent of the workday, his right arm for fifteen percent of the workday, and his left arm for ten percent of the workday. Tr. 524. Notably, Ms. Burfine also opined that Plaintiff's medical issues would prevent him from maintaining a regular work schedule three or four times a month. Tr. 525.

The Appeals Council erred in discounting Ms. Burfine's opinion. The Appeals Council gave Ms. Burfine's opinion little weight because "the medical record does not support her opinion." Tr. 6. The Appeals Council stated that the record shows no evidence of a gait impairment and that the record provides insufficient evidence to support a severe hand impairment. Tr. 6. The Appeals Council focused on gait impairment and severe hand pain as reasons for discounting Ms. Burfine's opinion and the Commissioner appears to cherry-pick reasons for discounting an opinion showing a fairly severe constellation of symptoms. The court concludes the Appeals Council failed to provide germane reasons supported by substantial evidence for rejecting Ms. Burfine's opinion, when viewing the record as a whole.

Ms. Burfine's opinion that Plaintiff has physical limitations including but not limited to hand pain, neck and shoulder pain, and back and lumbar pain with parathesis to the dorsum of both feet is largely supported in the record. *E.g.,* Tr. 356, 386, 405, 433, 436. Ms. Burfine noted limitations in plaintiff's ability to sit, stand, and walk in an eight-hour workday which is also supported by the record. Tr. 523. Ms. Burfine's opinion regarding plaintiff's depression, pain,

irritability, and anger are supported by substantial evidence in the record as a whole. Tr. 356, 391, 407, 445, 454, 455, 458, 475. Additionally, Ms. Burfine diagnosed Plaintiff with gastroesophageal reflux disease ("GERD"), insomnia, panic disorder, cervicalgia, paresthesia, social phobia, anxiety, left hip pain, overweight, hypertension, depression, trichotillomania, irritability, and anger. Tr. 521. These diagnoses, especially panic disorder, anxiety, and social phobia, are supported by substantial evidence in the record. Accordingly, the court concludes that the Commissioner's determination to give Ms. Burfine's opinion "little weight" is not supported by substantial evidence when viewing the record as whole and the ALJ has erred.

II.     Plaintiff's Subjective Symptom Testimony

   A.    Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Clear and convincing reasons for rejecting a claimant's subjective symptom testimony include "conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

  B.  *Analysis*

At the hearing, Plaintiff testified he is forty-eight years old and completed the eleventh grade. Tr. 40. He testified that he is not currently working and has not worked since December 2015 when he had neck surgery. Tr. 41. Plaintiff testified that he was losing strength in his left arm, so he went to the doctor and discovered that he had a crushed nerve. Tr. 42. He testified that the surgery fixed the previous problems, but that it created more problems; following the surgery, his arm frequently goes numb, is achy, and is painful to use. Tr. 42.

Plaintiff testified that before December 2015, he was working on a farm. Tr. 41. Plaintiff stated that while he was working hundred-hour weeks on the tractors, he would start "flipping out." Tr. 42. Plaintiff described "flipping out" as screaming, yelling, hitting things, and losing control. Tr. 42. Plaintiff stated that he attempted to go back to farm work after the December 2015 surgery, but that it took three days to recover after working one day. Tr. 43.

Plaintiff described trying other types of work, but that he doesn't "work with the public." Tr. 43. Plaintiff stated that he liked being alone and that he gets really nervous around people; he noted that he was nervous at the hearing. Tr. 43. Plaintiff testified that he does not know what

goes on in his head and that there are "a lot of things going on up there." Tr. 43. Plaintiff stated that "little things just set me off," and that he loses all control and starts yelling, screaming, and hitting. Tr. 44. He stated he doesn't know how to explain losing control, and that he still loses control and that it happens in his daily life. Tr. 44. Plaintiff testified that he now takes medication, but that he still has "issues" a couple times a week. Tr. 44-45. He stated that "the wind could blow on me, something could get stuck on my feet, just anything, you know, my hand might bump something, and all of a sudden now I'm angry, and I just can't control it." Tr. 45.

Plaintiff testified that he lives with his sister. Tr. 45. He stated that he does yard work for his sister "because they are the only ones who could actually put up" with him, and that he does yard work in exchange for a place to live. Tr. 45. Plaintiff testified that no animals live with them, but that in the past there were cattle and horses. Tr. 45. He stated that he used to feed the cows and that took five minutes in the morning. Tr. 46.

Plaintiff stated that he spends three-to-four hours a day doing yard work. Tr. 47. He testified that he tries to stay away from people. Tr. 47. Plaintiff testified that he didn't think he could maintain a job doing yard work outside of the home because he would probably "have a flip out moment." Tr. 47. He testified that he doesn't know how to control those "crazy moments," and stated that it could happen in the middle of the night, where he starts panicking and running around. Tr. 47-48. Plaintiff testified that it is "kind of scary." Tr. 48.

Plaintiff stated that he once saw a psychologist because people were worried about him and he was having a hard time. Tr. 49. Plaintiff testified that he is taking medication right now that makes him "bawl all day long." Tr. 49. He said that he was referred to a counselor but was told not to come back until he was "on drugs." Tr. 50. He testified that he can lift maybe twenty

pounds before it bothers him, and stated that he wouldn't "be able to hardly move the next day," because lifting would affect his neck and arm. Tr. 51-53. Plaintiff testified that he has trouble sitting because it hurts his neck, and to relieve the neck pain, he lays down. Tr. 51. He testified that in the middle of day, he lays down for five-to-ten minutes to get a little pressure of his neck, and takes Tylenol and ibuprofen for the pain. Tr. 52.

        1.     objective medical evidence

Contradiction with the medical record is a relevant consideration in discounting a claimant's subjective symptom testimony. *Carmickle*, 533 F.3d at 1161; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding that ALJ may consider lack of medical evidence but it cannot be the only factor supporting an adverse credibility finding); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (same).

In the decision, the ALJ stated that the medical record "does not support the severity of the claimant's symptoms." Tr. 24. The ALJ explained that Plaintiff's complaints of chronic neck pain and weakness in his left arm related to his degenerative disc disease were not supported by the medical record; MRI scans from July 2015 and September 2015 showed only mild degenerative changes in his cervical spine. Tr. 24. The ALJ also stated that a February 2016 MRI revealed some postsurgical changes with mild and upper mid cervical spine degenerative changes but showed no evidence of complication or neurological involvement, whereas a March 2016 MRI revealed excellent artificial disk position and no abnormal alignment. Tr. 24. The ALJ also stated that although Plaintiff complained of increasing cervical pain that radiated into the arms around November 2017 and imaging revealed some possible slight telescoping, the imaging did not show any evidence of significant halo formation. Tr. 24. The ALJ also noted that while

post-surgical musculoskeletal examinations have varied and have demonstrated decreased strength and sensation in the left upper extremity, the examinations have shown full active and passage range of motion, five-out-of-five muscle strength, and intact coordination, sensation, reflexes, and muscle tone. Tr. 24.

The ALJ noted specific medical evidence in the record that does not fully support Plaintiff's subjective testimony regarding his physical health. However, the ALJ's analysis concerning Plaintiff's mental health is not supported by substantial evidence.

The ALJ stated that Plaintiff experiences the following signs and symptoms: anxiety, depression, panic attacks, memory loss, confusion, sleep disturbance, appetite disturbance, chest pressure, sweating, night terrors, and irritability. Tr. 25. The ALJ then stated that Plaintiff's mental status examinations have demonstrated "alertness, orientation, a casual appearance with intact grooming and hygiene, with a pleasant, friendly, and cooperative demeanor, socially appropriate behavior, a depressed mood, a variable affect, intact memory, attention, and concentration, intact cognition, low average intellectual functioning, and intact insight and judgment, as well as a generally coherent logical and goal directed thought process and content." Tr. 25. The ALJ also stated that the Plaintiff has been treated with therapy as well as multiple medications, including lorazepam, clonazepam, remeron, marijuana, nortriptyline, fluoxetine, duloxetine, and venlafaxine. Tr. 25. The ALJ notes some improvements in Plaintiff's symptoms. Tr. 25.

The ALJ's first rationale fails to provide specific, clear, and convincing reasoning for discounting Plaintiff's mental health symptoms. In the decision, the ALJ simply summarized portions of the record without stating the reasoning and cherry-picked portions of the record.

Page 15 – OPINION AND ORDER

Mental health treatment records must be viewed "in light of the overall diagnostic record." *Garrison*, 759 F.3d at 1017 (holding ALJ erred in rejecting claimant's testimony by pointing to some treatment records showing occasional signs of improvement where overall record showed persistent nightmares, hallucinations, social anxiety, difficulty sleeping, and feelings of hopelessness); *Richard R. v. Comm'r Soc. Sec. Admin.*, Case No. 3:19-cv-00918-MK, 2020 WL 4193114, at *4 (D. Or. July 21, 2020) (holding ALJ erred in discounting claimant's testimony about severity of mental health limitations by citing to treatment notes showing "cooperative behavior, organized and goal directed thought process and intact memory"). Contrary to the ALJ's findings, the record reveals anxiety disorder, social anxiety, depression, and panic attacks. *See, e.g.,* Tr. 296, 428, 455, 458, 486. Therefore, the court concludes the ALJ's first rationale is not supported by substantial evidence when reviewing the record as a whole, and fails to provide a specific, clear, and convincing reason for discounting Plaintiff's subjective symptom testimony.

        2.        conservative treatment

The ALJ discounted Plaintiff's subjective symptoms testimony because Plaintiff has "not generally received the type of medical treatment one would expect for a totally disabled individual." Tr. 25. "Conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Specifically, the ALJ found that since Plaintiff's surgery, his treatment has been conservative, and largely managed with over-the-counter and prescription medication. Tr. 25.

Again, the ALJ's finding is not supported by substantial evidence because the record shows that Plaintiff has exhausted all surgical options. Tr. 451. In *Lapeirre-Gutt v. Astrue,* the court stated that the ALJ erred in relying on "conservative treatment" as a basis for rejecting the

plaintiff's testimony stating that "a claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). Here, the record reveals that Plaintiff has engaged in extensive medical treatment: he had surgery; he engaged in physical therapy, acupuncture, and chiropractic care; and he has been prescribed various medications. *E.g.,* Tr. 25, 292, 499, 505. Therefore, the ALJ's second rationale is not supported by substantial evidence and fails to provide a specific, clear, and convincing reason for discounting Plaintiff's subjective symptom testimony.

### 3. activities of daily living

Activities of daily living may provide a basis for discounting a claimant's subjective symptoms if the ADLs contradict his testimony of total disability or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *superseded by regulation on other grounds as stated in Schuyler v. Saul*, 813 F. App'x 341, 342 (9th Cir. 2020). However, a claimant does not need to be utterly incapacitated to receive disability benefits, and a claimant's ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *Molina,* 674 F.3d at 1112-13 (observing that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Plaintiff's limitations "are not fully supported by his reported activities in the medical and other evidence of record." Tr. 25. The court disagrees. Plaintiff's ability to occasionally care for his nephews, prepare simple meals, do household chores, handle his finances, or attend sporting events does not mean that Plaintiff is capable of working for eight hours a day

Page 17 – OPINION AND ORDER

five days a week. Tr. 25. Although, the record shows that Plaintiff injured himself while moving cinderblocks, this solitary instance does not undermine other evidence in the record of limited activity. Tr. 494. The ALJ suggests that caring for livestock and riding a tractor are activities that undermine Plaintiff's subjective symptom testimony. Tr. 25. Plaintiff testified that caring for livestock required approximately five minutes of his time. Tr. 46. And, the record is not clear whether these activities occurred while working on a farm or at a past residence or during the relevant time period. In addition, getting kicked by a horse has no bearing on Plaintiff's subjective symptom testimony. In actuality, there is sufficient evidence that Plaintiff has physical limitations and requires breaks. Therefore, the ALJ's third rationale is not supported by substantial evidence and the ALJ failed to provide a specific, clear, and convincing reason for discounting Plaintiff's subjective symptom testimony. Furthermore, even if Plaintiff's activities of daily living were supported by substantial evidence, the court concludes that this reason alone, on this record, does not amount to clear and convincing support to reject Plaintiff's subjective symptom testimony.

In short, the ALJ has failed to provide clear and convincing evidence backed by substantial evidence for discounting Plaintiff's subjective symptom testimony.

III.   Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3)

after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

The Plaintiff meets all three criteria of the credit-as-true standard. First, the Commissioner has erred in rejecting Dr. Alvord's opinion, Ms. Burfine's opinion, and Plaintiff's subjective symptom testimony. Second, the record has been fully developed and there are no material conflicts that require further resolution. Dr. Alvord diagnosed Plaintiff with numerous marked limitations that establish disability. Ms. Burfine also assessed that Plaintiff would be absent three to four days per month due to his impairments, which precludes competitive employment. Third, further proceedings would serve no useful purpose because when the discredited opinion evidence is properly considered, record reveals Plaintiff is unable to sustain competitive employment.

Where a claimant meets all three criteria of the credit-as-true standard, remanding for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020-21 (citations omitted). Carefully considering the record as a whole, there is no "serious doubt" that Plaintiff is in fact disabled. *See id.* at 1021; *see also Revels*, 874 F.3d at 668 n.8 (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled").

Accordingly, the Court exercises its discretion and credits the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

*Conclusion*

Based on the foregoing, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision REVERSED and REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 28th day of February, 2022.

                                                               JOHN V. ACOSTA
                                            United States Magistrate Judge